# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Greenbelt Division)

| | |
|---|---|
| **EILEEN WITTE**<br>**5212 Muirfield Drive**<br>**Ijamsville, MD 21754**<br><br>    *Plaintiff*,<br><br>    v.<br><br>**CAREFUSION, INC.**<br>**3750 Torrey View Court**<br>**San Diego, CA 92130**<br><br>   Serve Resident Agent:<br>   **THE CORPORATION TRUST**<br>   **INCORPORATED**<br>   **351 West Camden Street**<br>   **Baltimore, MD 21201**<br><br>    *Defendant*. | **Civ. No. 8:15-cv-3972**<br><br>**Jury Trial Demand** |

## COMPLAINT AND JURY DEMAND

COMES NOW, the Plaintiff, Eileen Witte, by and through counsel, Brian J. Markovitz, Esq., Guru Vijay Shanmugamani, Esq. and the law firm of Joseph, Greenwald & Laake, P.A., and brings this Complaint seeking Judgment against Carefusion, Inc. ("Defendant"), pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623 and 626, for employment discrimination based upon age.

## JURISDICTION & VENUE

1. This Court has jurisdiction of Plaintiff's claims herein pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), as this action is brought under Sections 4 and 7 of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623 and 626.

2. Venue herein is proper under 28 U.S.C. § 1391 (b) and (c).

1

3. Proper venue is in this Court because the events giving rise to the claims asserted occurred within the district of this Court and Defendant conducts its business within the district of this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. For the ADEA counts, all administrative requirements to filing this lawsuit have been satisfied: to wit, Plaintiff timely filed an administrative complaint based on discrimination with the Equal Employment Opportunity Commission (EEOC) on September 26, 2013, and received a right to sue letter on September 29, 2015. Thus, this civil action was timely filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

## PARTIES

5. Plaintiff is an adult, female resident of the State of Maryland, residing at 5212 Muirfield Drive, Ijamsville, MD 21754.

6. Defendant Carefusion, Inc. is a corporation that conducts business in the State of Maryland, but has its principal office at 3750 Torrey View Court, San Diego, CA 92130.

7. Defendant is a "person" within the meaning of 29 U.S.C. § 630(a) and an "employer" within the meaning of 29 U.S.C. § 630(b). Defendant hired Plaintiff as an employee and is subject to the laws preventing discrimination in employment as set forth more fully below.

## FACTS

8. Plaintiff began working for Defendant as a Sales Representative in about September of 2003 in the Acute Care Division. In about 2006, Defendant transferred Plaintiff to the Specialty Care Division that ultimately became the Specialty Hospital Division after Defendant reorganized its territories.

9. Plaintiff was fifty-nine (59) years old at the time of the events that led to the allegation herein.

10. Plaintiff's primary sales territory remained in Maryland, as Plaintiff was a Maryland resident, and worked out of her home when not driving to and from customers' offices.

11. Defendant was based in San Diego, California and her supervisor was in New York.

12. During Plaintiff's tenure, she never received a poor performance evaluation. On Defendant's rating scale – 1 to 5, with 5 being the highest rating and 1 being the lowest – Plaintiff never received a rating below 3, as Plaintiff always performed exceptionally or at least satisfactorily.

13. In about August of 2012, Defendant hired David Kaluzna, who was in his thirties to be Plaintiff's manager. Mr. Kaluzna began discriminating against older employees, and particularly, Plaintiff.

14. Specifically, in and around that same time, a manager from another division contacted Plaintiff about the possibility of transferring. However, Mr. Kaluzna, unbeknownst to Plaintiff, contacted that manager, Terese Kelley, and asked Ms. Kelley not to interview Plaintiff.

15. Ms. Kelley did not interview Plaintiff and hired someone else for the position who was significantly younger than Plaintiff, only after talking to Mr. Kaluzna.

16. At that time, Defendant had been without a Sales Representative for the Northeast Region, as well as a portion of the South Region. Plaintiff covered her own region - the Washington Metro Region, as well as the Northeast and the unstaffed portion of the South Region, essentially making Plaintiff's territory the entire east coast, including South Carolina and all states above it.

17. This meant Plaintiff remained responsible for three Sales Representatives' territories.

18. July 2013 was the start of Defendant's new fiscal year, so the applicable cycle remained from July 2012 – June 2013. While Plaintiff had slower than usual sales during the first quarter of that cycle, she had just had a very large sales quarter the fourth quarter of the previous fiscal year. The nature of Defendant's business is cyclical; thus, having sales over one quarter and slightly under the next is not unusual and other Sales Representatives had similar situations.

19. In about January 2013, Mr. Kaluzna placed Plaintiff on a Performance Improvement Plan (PIP). The terms of the PIP primarily required that Plaintiff meet her sales goals for the year.

20. By the end of the third quarter of the fiscal year, Plaintiff not only met her sales goals through the third quarter, but also exceeded them by over six hundred thousand dollars ($600,000).

21. In fact, at that time Plaintiff remained on track to reach her entire fiscal year sales quota by April 2013 (three months early), which put Plaintiff on track to receive commission-accelerators for the remaining time in that fiscal year.

22. Plaintiff met all requirements of the PIP, including not only the sale quotas, but the other more clerical requirements. None of Defendant's younger employees who had not met their projected sales goals in the first quarter of 2013 was placed on a PIP.

23. During March of 2013, Mr. Kaluzna asked Plaintiff to give him a record of all of her appointments and client contacts, including points of contact for every sales deal that Plaintiff had been working towards.

24. Shortly thereafter, on about April 4, 2013, Defendant terminated Plaintiff's employment for the false and pretextual reason of not meeting the requirements of the PIP.

25. At that time Plaintiff remained the oldest, at fifty-nine (59) years old, salesperson in Plaintiff's sales group. All of the other sales people were under fifty and in most cases under forty years of age.

26. Also importantly, shortly after Defendant terminated Plaintiff's employment, Defendant replaced Plaintiff with a thirty eight (38) year old man.

27. In fact, Defendant has a history of discriminating against older workers. Earlier in Plaintiff's tenure, a colleague of Plaintiff's named Phil Marion, who was approximately sixty (60) years old, was placed on a PIP for failing to meet his quota for just one quarter and was terminated shortly thereafter. At that time, none of the younger workers were placed on PIPs for not meeting their sales quotas, or subsequently terminated.

28. Defendant's termination of Plaintiff's employment remains baseless.  Plaintiff performed exceedingly well and surpassed Defendant's sales requirements for the year.

29. Plaintiff would have had a record year had it not been for her termination.  At the time of Plaintiff's termination, she ranked fourth in the nation among her peers in sales.

30. Plaintiff was a fifty-nine (59) year old woman, supervised by a thirty-six (36) year old man, and ultimately replaced by a significantly younger, thirty-eight (38) year old man.

31. Defendant also denied Plaintiff her bonus and commissions earned during the relevant fiscal year, while awarding its younger employees, who did perform as well as Plaintiff, with bonuses and commissions.

32. Defendant now only hires persons significantly younger than Plaintiff to make up its sales force, and continues to discriminate against older employees.

## COUNT I

### Employment Discrimination – Age – Disparate Treatment
### ADEA – 29 U.S.C. § 623

33. Plaintiff adopts and incorporates by reference each and every allegation contained in each of the foregoing paragraphs as fully restated herein.

34. The decision to place Plaintiff on a PIP, require her to perform certain tasks, deny her bonuses and commissions, and terminate her employment, compared to the younger sales representatives at Defendant, was because of Plaintiff's age (59).

35. These decisions were also made with the knowledge that doing so would interfere with Plaintiff's rights protected under the ADEA and, thus, would be in violation of federal law.

36. Accordingly, Plaintiff's termination from employment was an unlawful employment action in violation of the ADEA, 29 U.S.C. § 623.

37. As a result of this unlawful employment action, Plaintiff has suffered damages, and continues to suffer damages, including, but not limited to, lost wages and lost benefits.

WHEREFORE, Plaintiff, demands judgment against Defendant, and seeks the following relief:

    a. Reimbursement for lost wages in the form of back pay;

    b. Reimbursement for lost benefits;

    c. Pre-judgment interest on lost wages and on lost benefits;

    d. Reinstatement (or front pay);

    e. Punitive Damages;

    f. Reimbursement for court costs and reasonable attorney's fees; and

    g. Such other relief as this Court may deem just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a trial by jury on all issues of triable fact in the foregoing complaint.

DATE:  December 28, 2015

Respectfully submitted,

JOSEPH, GREENWALD & LAAKE, P.A.

/s/ ___Brian J. Markovitz_____
Brian J. Markovitz, Esq. (Bar # 15859)
Guru V. Shanmugamani, Esq. (Bar # 19147)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
301.220.2200 (T)
301.220.1214 (F)
bmarkovitz@jgllaw.com
vmani@jgllaw.com
*Counsel for Plaintiff*